ALBANY,
Feb. 1827.

Hall
v.
Daggett.

HALL *against* DAGGETT and KENSETT.

ON error from the C. P. of the city and county of *New-York.*

The action in the court below was trover by *Daggett* and *Kensett* against *Hall,* for certain cases and boxes of provisions preserved fresh. The plaintiffs produced, on the trial, an agreement between themselves and the defendant below, dated *April* 15*th,* 1822, by which they agreed to carry on the business of preserving fresh provisions, which they warranted to keep sweet and good for any voyage or climate ; and agreed, in consideration of the use of $600, received of *Hall,* that *Hall* should be the only agent for selling the provisions in the city of *New-York,* for 10 years; and should be allowed 20 *per cent.* on all sales made by him, or through his agency in that city, or any other place where it might be advisable to go for the sale ; and that he should be entitled to ⅓ of the net proceeds of sales, after deducting the 20 *per cent.* to apply on the amount advanced by him until it should be liquidated. *Hall* agreed to furnish a suitable repository for the sale, at his own cost and expense ; and be responsible for all sales made by him. Wherever he might go for the sale, it should be at his own expense.

The plaintiffs below proved that the defendant had received provisions under this contract, from the plaintiffs, to the value of $6763,30, and had returned to the value of $1184,17, and paid the plaintiffs $4194,22. This was between the 12*th* of *January,* 1822, and the 2*d* of *August,* 1824, and proof was also given of the delivery of other provisions; all in pursuance of the contract. On the last of *December,* 1824, *Kensett* went to *Hall's* store in *New-York* ; and demanded all the provisions so delivered which were then unsold ; and forbid *Hall* making any more sales ; asked *Hall* to render his account ; and offered that if he had any demand, or any storage, he (*K.*) would pay. *Hall*

*D.* and *K.* agreed with *H.* that the former should carry on the business of preserving fresh provisions ; and in consideration of the use of $600 advanced by *H.* made him their only agent for selling the provisions in the city of *New-York,* for 10 years ; agreed that he should be allowed 20 *per cent.* on all sales ; and 1-3 of the net proceeds, after deducting the *per cent.* to apply on the amount advanced, till it should be liquidated ; *H.* to furnish a repository at his own cost, and be responsible for his sales.

*Held,* that *D.* and *H.* had no right to demand the goods delivered to *H.* under this contract ; he having an interest in them, and a right to detain and sell them pursuant to the contract.

*Held,* also, that the contract was not usurious.

then produced the contract; and asked *Kensett*, if he intended to comply with it? This was repeated about the middle of *January*, when *Hall* offered to render his account; but said he would consult his attorney first.

The plaintiffs resting on this proof, the defendant moved for a nonsuit, which was overruled; and the judge charged that the plaintiffs had a right to demand the goods, on paying the defendant's lien, if any, whose duty it was to assert his lien, and render his account. If he had not done so, he had waived it. Whether it was asserted, and what the value of the remaining goods was, he left to the jury, who found for the plaintiffs $500 damages; on which judgment was rendered with costs. A bill of exceptions was taken to the opinion and charge of the court.

*J. Platt*, for the plaintiff in error, contended that the defendant below had a special property in the goods under the contract; with the right of possession. He was entitled to retain for his advances. The contract being in full force, and the defendant in the act of performing it, there was no conversion. He cited 7 *T. R.* 387, 394, *per Lawrence, J.*; 2 *Selw. N. P.* 1265; 7 *T. R.* 9; 2 *B. & P.* 438.

*S. P. Staples*, contra. If the defendant below had any lien, he should have put himself upon it. (1 *Campb.* 410, *n.* 1 *M. & S.* 147.) Not doing this, he waived it. But he had none. An offer was made to pay his demand; but no account was rendered. It is a mistake to say he had any interest in the provisions. His interest was in the contract. But suppose he had an interest in the goods, it was merely as agent or factor; and on payment or tender of his lien, he was bound to give up the goods. A factor, even on *del credere*, can do no less. An action on the case could have been only for not selling the provisions according to contract. If trover will not lie, we are remediless.

Beside, the contract was usurious and void.

ALBANY,
Feb. 1827.

Hall
v.
Daggett.

*Curia*, per SAVAGE, Ch. J. The law is well settled, that the action of trover cannot be maintained, without the right of possession. The right of property alone is not enough. (7 *T. R.* 9.) This principle is not controverted; but it is contended that the plaintiffs below, having the right of property, became entitled also to the right of possession, by the demand of an account, and an offer to pay any lien which the defendant had : and further, that the defendant not having asserted any lien when the demand was made, such lien, if any existed, was waived. And it has been decided, that if one having a lien upon goods, when they are demanded of him, claims to retain them upon a different ground, making no mention of the lien, trover may be maintained against him, without evidence of any tender having been made of the amount of his lien. (1 *Campb.* 410. 1 *M. & S.* 148.)

The defendant in this case asserted no lien, except such as he was entitled to under his contract with the plaintiffs. The property in question had gone into his possession under that contract. If it was valid, and he had a right to retain the property and make sale of it, he was then entitled to 20 *per cent.* for commissions, and one third of the residue, to apply towards his advance of $600.

The rights of the parties seem to me to be different from those of principal and factor generally. As between the latter, no doubt the principal may demand his goods, on tendering to the factor the amount of his lien for advances and expenses. As to commissions, there can be none, I apprehend, when there is no sale. But when parties choose to make a special contract, their rights must be determined by it. According to this contract, the defendant below advances money, as may be inferred, to purchase the raw material. The plaintiffs below are to manufacture it, and the defendant is to sell the manufactured article, and the 20 *per cent.* commissions pay him for the use of his money, for his trouble in making sales, and for guarantying those sales. If the plaintiffs below have it in their power to recover the property delivered to the defendant, they virtually abrogate their own agreement. They take

away from the defendant the advantages resulting to him from the business; and trifle with their contract. The case of *Bromley* v. *Coxwell*, (2 *B. & P.* 438,) is an authority to shew that trover does not lie for goods delivered under a special contract, unless that contract is violated by the defendant. There the plaintiff sent some prints to the defendant in *India*, to be sold. They were not sold, because the price was too high. The plaintiff brought trover; but the court held that the conduct of the defendant, (who had left the prints with another person for sale,) did not amount to a conversion.

There is no pretence that the defendant below violated the contract. He was, therefore, lawfully in possession; and all the plaintiffs below had a right to ask of him, was the proceeds of sales, after deducting his commissions, and one third of the residue.

It is contended, however, on the part of the plaintiffs below, that the contract was usurious. There was a loan of $600, it may be inferred; though from the phraseology of the contract, it might equally be inferred that there was a previous indebtedness to that amount. But I am willing to consider the advance of $600, as made at the date of the contract. The parties were then about to begin a new business, the success of which was doubtful. The defendant was to incur a considerable expense on his part, preparatory to the sale of the goods in question; and it was by no means certain that the commissions would amount to 7 *per cent.* upon the money loaned, to say nothing of the interest of the money expended by him in furnishing a suitable repository, and of his personal services in making sale of the provisions. How can it be said that there was reserved an interest of any per centage at all? The defendant was to receive his principal from the proceeds of the sales. Suppose the articles had not found a ready market, but had remained on hand; could the defendant have recovered of the plaintiffs either principal or interest? The whole contract seems to me to shew the commencement of a new adventure; a speculation in which these parties were separately interested; and each was liable

ALBANY,
Feb. 1827.

Hall
v.
Daggett.

to loss, or, perhaps, might make large profits. If, indeed, the transaction was merely colorable, and intended to cover a loan reserving more than 7 *per cent.*, the form of the contract would not shield the lender.    Thus, if the lender, besides interest, is to have a certain portion of the profits of a trade which exceeds legal interest, and is not liable to losses, it is usurious.    (4 *T. R.* 353.)    But if money is loaned, and the lender is to have part of the profits, and is subject to loss, it is not usurious.    (2 *Burr.* 891.)    The case under consideration, is not within these authorities. The lender here does not receive his interest, and profits beside; nor is his principal otherwise at risk, than as it may depend on the solvency of the borrowers, or their compliance with their contract.    But it is also distinguishable in another important particular: the lender in this case renders personal services, and incurs other expenses in carrying on the business : and after all this, his compensation depends upon an untried experiment in this new branch of business.

It seems to me, then, that this contract is above all suspicion of usury ; that the defendant was lawfully in possession of the goods in question, according to the terms of the contract; and was entitled to hold them, by the provisions of the contract, for sale ; and that the plaintiffs had no claim for the goods themselves, but only for the proceeds, after deducting the defendant's commissions, and one third towards payment of the demand due to him. Of course trover would not lie.    The judgment below must be reversed.

                    Judgment reversed.